UNITED STATES of America

v.

PREMISES KNOWN AS 608 TAYLOR AVE., APARTMENT 302, PITTS-BURGH, PENNSYLVANIA, et al.

Appeal of Harold MARGOLIS.

No. 77–2408.

United States Court of Appeals, Third Circuit.

Argued June 5, 1978.

Decided Sept. 21, 1978.

1298

related to the government's interests in the property. Accordingly, we vacate the order denying the motion and remand.

Blair A. Griffith, U. S. Atty., J. Alan Johnson, Bruce A. Antikowiak, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Leonard I. Sharon, Pittsburgh, Pa., Lee H. Adler, Beckley, W. Va., Michael L. Rosenfield, Albuquerque, N. M., for appellant.

Before GIBBONS, ROSENN and HUNTER, Circuit Judges.

## OPINION

JAMES HUNTER, III, Circuit Judge:

In this appeal we consider the limitations upon the government's retention of property legally seized pursuant to a search warrant. Appellant Harold Margolis made a motion for return of goods, including approximately $12,000 in currency, seized by agents of the Federal Bureau of Investigation. He contends that the government's continued possession of the property violates due process. The district court ruled that the government may retain seized property for a reasonable time before instituting criminal proceedings and denied relief. We agree with the rule adopted, but believe that the court should also have determined whether the retention reasonably

## I

On February 1, 1977, Special Agents of the Federal Bureau of Investigation conducted a search of fifteen residences within the Western District of Pennsylvania. The search was made pursuant to a warrant pertaining to gambling contraband used in violation of 18 U.S.C. § 1955.[1] During the search at the home of Harold Margolis, the agents seized, among other items, $11,975 in United States currency.[2]

On April 20, 1977 Margolis filed a "Motion for Return of Goods Seized." To our knowledge, no criminal proceedings of any sort have been commenced against Margolis, and no forfeiture proceedings have been brought against the property. In the motion Margolis indicated that he had no objection to the government's photographing the currency or making notations of the serial numbers and denominations before the cash was returned. Margolis stipulated for purposes of the motion that the search warrant and seizure were valid. He contended that the retention of the property violated his fifth amendment due process rights.

The district court on May 3 denied the motion.[3] The court followed the rule in

1. 18 U.S.C. § 1955 (1976) provides, in part:
   (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

   . . . .

   (d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission of mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been in-

   curred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

   . . . . .

2. The other items seized included sports schedules, various papers and a paper shredder.

3. Jurisdiction to entertain such a motion is founded on the inherent supervisory power of the district court over the United States Attorney's office and over law enforcement officials within the district. *See e. g., Go-Bart Import-*

*Shea v. Gabriel,* 520 F.2d 879, 882 (1st Cir. 1975), that the government's retention of seized property without commencing some sort of proceeding would violate the Constitution if the delay took on "unreasonable proportions." The court held that the three-month delay was not unreasonable and denied the motion.

On July 13, 1977, Margolis filed a "Petition for Reconsideration" of the May 3 order, and requested return of the $11,975. The trial judge treated the petition as a renewed motion for return of goods in light of the continued failure of the government to commence any proceedings against Margolis or the property. An evidentiary hearing was held. In an opinion and order filed September 22, the trial court found that the currency was related to an ongoing investigation. Also, the court found that the sort of investigation involved often resulted in a one to two-year delay after a search before an indictment is brought. Under the rule announced in its previous opinion, the district court held that the government was still acting reasonably and accordingly denied Margolis' motion. The court indicated that the motion could be renewed at such time as the government's "inaction or delay eventually deteriorates to unreasonable proportions and thereby infringes upon the movant's Fifth Amendment rights." Margolis filed a timely notice of appeal from that order denying the July 13 motion for return of seized goods.

## II

■ At the outset we must address the question as to whether we have jurisdiction to hear this appeal. The only basis for jurisdiction raised by the parties is that the denial of the motion for the return of property is a "final decision" within the meaning of 28 U.S.C. § 1291. The Supreme Court has indicated that finality of an order relating to a potential criminal prosecution is governed by the independence of the order from the criminal proceeding. An order relating to a motion to suppress evidence, even before an indictment, is not an appealable order. Such a ruling is considered to be merely a step in the criminal process, and any rights involved are adequately protected in subsequent trial proceedings. *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). *See G. M. Leasing Corp. v. United States,* 429 U.S. 338, 359, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *Meister v. United States,* 397 F.2d 268 (3d Cir. 1968). On the other hand, determination of a motion for the return of property was not considered to be intimately involved in the criminal process, since the property rights asserted in such a motion are often unrelated to those which will be involved in a criminal trial. Under some circumstances, orders denying such motions are immediately appealable. *DiBella v. United States, supra,* 369 U.S. at 131–32, 82 S.Ct. 654; *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *United States v. Fields,* 425 F.2d 883 (3d Cir. 1970). The question of whether the motion is for the return of property or whether it also involves the suppression of evidence is to be resolved by examining the "essential character" of the proceedings below. *Cogen v. United States,* 278 U.S. 221, 225, 49 S.Ct. 118, 73 L.Ed. 275 (1929); *Smith v. United States,* 377 F.2d 739, 742 (3d Cir. 1967). *See Carroll v. United States,* 354 U.S. 394, 404 n. 17, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); *Shea v. Gabriel, supra,* 520 F.2d at 881; *United States v. Peachtree National Distributors,* 456 F.2d 442 (5th Cir. 1972); *Meister v. United States, supra.*

■ We hold that the essential character of Margolis' motion is solely for the return of property. For purposes of this proceeding, the movant has stipulated that the search and seizure were lawful. The

---

*ing Co. v. United States,* 282 U.S. 344, 354–55, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *United States v. Chapman,* 559 F.2d 402 (5th Cir..1977); *United States v. Wilson,* 176 U.S.App.D.C. 321, 540 F.2d 1100 (1976); *In re Grand Jury Proceedings,* 450 F.2d 199, 207–09 & n. 15 (3d Cir.

1971) (en banc), *aff'd sub nom., Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *Lord v. Kelley,* 223 F.Supp. 684 (D.Mass.1963) (Wyzanski, J.), *appeal dism'd,* 334 F.2d 742 (1st Cir. 1964).

motion was argued only on the basis that the government violated due process by continuing to hold the property without bringing any action to which the property would relate. Such an argument does not relate to issues germane to a criminal trial which might result from the government's investigation. Margolis has offered to allow the government to photograph and otherwise preserve the evidentiary value of the cash which was seized. Thus, the effect of the motion if granted would not interfere with any criminal proceedings which might result. We believe that the motion below should be considered in substance to be independent from any future criminal proceedings.

Our finding that the motion was for the return of property does not end our inquiry. The policy of avoiding piecemeal appeals has been interpreted to deprive an order denying motion for the return of goods of finality when it relates to an already existing prosecution. The Court in *DiBella* explained:

> Only if the motion is solely for the return of property and is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent.

369 U.S. at 131–32, 82 S.Ct. at 660. *See United States v. Ryan, supra,* 402 U.S. at 533, 91 S.Ct. 1580; *Shea v. Gabriel, supra,* 520 F.2d at 881–82; *United States v. Alexander,* 428 F.2d 1169, 1171 (8th Cir. 1970); *Smith v. United States, supra.* If a proceeding is pending, the movant is required to raise the motion for return of goods in that proceeding and to await a final order before taking an appeal.

In this case, no proceedings have been commenced against the movant or against the property. Indeed, part of Margolis' argument is that the government is delaying unreasonably in commencing any proceedings. The testimony indicated that the case is still in the "investigatory" rather than

the "accusatory" stage. *See Shea v. Gabriel, supra,* 520 F.2d at 882. We do not decide precisely at what point criminal process becomes a prosecution *"in esse"* for purposes of *DiBella,* but hold that the bringing of a prosecution in this case is too remote from Margolis' motion to deprive the district court's order of finality. *See Richey v. Smith,* 515 F.2d 1239, 1242–43 (5th Cir. 1975). To hold otherwise would effectively deny appellate review of claims for unreasonable delay such as raised by Margolis.

### III

Margolis argues that the Constitution places limitations on the government's retention of seized property. Since no proceedings of any kind have been commenced against appellant, we must consider his position to be the same as that of an innocent bystander whose property has been seized for possible use as evidence in a criminal investigation.

Appellant does not raise a claim under the fourth amendment that the search and seizure were unlawful, but contends that the prosecutor's continued possession of his property, particularly the currency, violates due process.[4] On appeal he takes the position that the government must return property "shortly" after a seizure, rather than after a reasonable time, as the district court held. He also argues that the government is required to return the currency if its evidentiary value can be fully preserved by other means, such as photographing the bills and recording serial numbers and denominations. He further suggests that if the government wishes to retain the bills themselves, he be given a check for their value or other compensation.

The government also opposes the reasonable-time rule adopted by the district court. Its position is that since the currency is being held chiefly for its evidentiary value,

---

4. Since Margolis for purposes of his motion concedes that the search and seizure were reasonable, this case does not involve the requirements of Fed.R.Crim.P. 41(e), governing a motion for return of unlawfully seized property.

*See generally In re Grand Jury Proceedings,* 450 F.2d 199, 207–09 (3d Cir. 1971) (en banc), *aff'd sub nom. Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

the prosecutor may retain the property until the end of subsequent grand jury and trial proceedings or until the statute of limitations on the suspected crime has elapsed.

The government is clearly permitted to seize evidence for use in investigations and trial. *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Nevertheless, the government may not by exercising its power to seize, effect a *de facto* forfeiture by retaining the property seized indefinitely. *See generally United States v. United States Coin and Currency,* 401 U.S. 715, 718, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (forfeiture must be based on finding that property was used in connection with wrongful conduct). As the government in this case concedes, property used as evidence must be returned once the criminal proceedings to which it relates have terminated, unless it is then subject to forfeiture or other proceedings which shall be timely brought. In *Lowther v. United States,* 480 F.2d 1031 (10th Cir. 1973), the court based such a holding on the premise that continued retention of evidence would constitute a taking without just compensation. In *United States v. Moore,* 423 F.Supp. 858 (S.D.W.Va.1976), the court relied on its supervisory power to govern the scope of the government's subpoena power, but also noted possible constitutional underpinnings to the limitation on retention of property seized. Other courts insisting on return of property after the end of proceedings have not been explicit as to the source of this limitation. *E. g., United States v. LaFatch,* 565 F.2d 81, 83 (6th Cir. 1977); *United States v. Wilson,* 176 U.S.App.D.C. 321, 325, 540 F.2d 1100, 1104 (1976); *In re Brenner,* 6 F.2d 425 (2d Cir. 1925); *United States v. Pardo-Bollard,* 229 F.Supp. 473 (S.D.N.Y.1964).

The parties in this case have pointed to only one court of appeals case which considered whether limitations might be placed on the government's retention of property prior to institution of proceedings. In *Shea v. Gabriel, supra,* the Court of Appeals for the First Circuit indicated that, in evaluating the retention of seized property, a court must weigh the interests of the government in holding the property against the owner's rights to use the property. As a part of this balance, the court noted that the government should not be permitted to hold the property for an unreasonable amount of time before prosecuting or bringing other dispositive action. 520 F.2d at 882. The district court adopted this rationale in denying appellant's motion and ruled that the government's delay was reasonable.

We believe that the reasonableness standard in *Shea* was correctly approved by the district court. The government's suggestion of a right to hold property until the statute of limitations has lapsed may in many cases impose an impermissible burden on a citizen whose property is potential evidence. For example, the statute of limitations on a conspiracy begins to run at the commission of the last overt act before termination of the conspiracy. *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *United States v. Johnson,* 165 F.2d 42 (3d Cir. 1947), *cert. denied,* 332 U.S. 852, 68 S.Ct. 355, 92 L.Ed. 422 (1948). If investigators seize valuable property belonging to an innocent third party, and the conspiracy does not soon thereafter terminate, the government's rule would allow property to be held as evidence for an indeterminate amount of time. Such a delay would be tantamount to a forfeiture without the procedures required by statute and by due process.

In some instances a reasonable delay in bringing a prosecution may well be the same as the period of the statute of limitations. We do not believe, however, that this will always be the case. We therefore hold that the district court under its powers to supervise the law enforcement officials and the United States Attorney within its jurisdiction may require the return of property held solely as evidence if the government has unreasonably delayed in bringing a prosecution. *Cf. United States v. Jacobs,* 547 F.2d 772 (2d Cir. 1976) (supervisory power relating to grand jury proceedings), *cert. dismissed as improvidently granted,*

436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978). In making its determination, the court should carefully balance the citizen's interest in use of his property against the wide-ranging governmental interests in law enforcement.

After the evidentiary hearing, the district court in this case found that investigations of gambling, such as that involving Margolis, often consumed as much as one to two years before any criminal proceedings are commenced. This finding is supported by the evidence. At the time of the decision below, seven months had passed since the seizures, and so the court's finding that the prosecutor was still within reasonable bounds is supported by substantial evidence.

Margolis argues that the district court erred by not taking an additional step beyond examining the government's delay. He urges that the court be required to examine whether the retention of the $11,975 was reasonably related to the need for the currency asserted by the government.

We agree with appellant's contention. Our starting point again is the case law dealing with the government's retention of property after the termination of a criminal trial. Courts which have insisted on the return of items of evidence after the end of a trial have reasoned that the government no longer had a valid reason for retaining the movant's property. *See e.g., United States v. Wilson, supra,* 540 F.2d at 1101; *United States v. Moore, supra,* 423 F.Supp. at 860. On the other hand, where the government has a continuing interest, such as forfeiture of the property or an outstanding tax lien, property need not be returned even though its usefulness as evidence has ceased. *See United States v. LaFatch, supra,* 565 F.2d at 83; *United States v. Wilson, supra,* 540 F.2d at 1101. *See generally United States v. Fields, supra.* In *In re Brenner, supra,* the court had before it a motion for return of property

after charges against movants relating to the illegal possession and use of alcoholic beverages had been dismissed. The United States claimed that it was permitted to continue to hold the liquor after the trial because of the possibility of future forfeiture proceedings or federal tax assessment. The court carefully reviewed these interests, but found them not to be sufficiently concrete to justify continued retention of the property. The motion was therefore granted. Implicit in these cases is the basic proposition that the government must have some interest in seized property in order to retain it. *Cf. Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) (balancing need for copy of motion picture film as evidence against burden on first amendment rights caused by seizure).

As was the case with the timeliness analysis, we do not believe that the reasoning of these cases should be confined to the retention of property after trial.[5] Even prior to trial, the government's decision to hold an item might not be reasonably related to the needs of investigation or trial. For example, assume that investigators are called to the scene of a bank robbery. Witnesses indicate that a robber ran out of the bank, fell against the parked car of an innocent bystander, and then fled down the street. The government may seize the car in order to lift fingerprints from it. Nevertheless, we do not believe that the prosecutor may in all cases insist on holding the car itself as evidence to be presented to a jury. The full evidentiary value of the seized property might be fully preserved when investigators photograph the fingerprints. The innocent bystander's interest in the use of his automobile would then clearly outweigh any incidental benefits to the prosecution in allowing the jury to view the car from which the prints were taken.

---

5. *Shea v. Gabriel,* 520 F.2d 879 (1st Cir. 1975), did not specifically address the question of whether the government should be required to indicate a need to hold seized property in the period of time before trial. Nevertheless, the court did not limit its concern to the delay in instituting proceedings. In affirming the denial of a motion for return of goods, the court of appeals examined the several additional circumstances surrounding government's retention of the goods, such as the need for secrecy in an investigation. *Id.* at 882.

We hold that the district court's determination of the reasonableness of the retention of Margolis' property should have included consideration of the purposes for which the property is being held. If the government's sole interest in retaining the currency is for its use as evidence, the court should consider whether this purpose would be equally well served by the alternatives to holding the money itself which were suggested by Margolis. As in its determination of timeliness, the court should be sensitive to the need to balance the owner's interests and the often complex and varied governmental interests in retaining evidence for trial. If the government's retention is unreasonable considering all circumstances, the district court as a matter of its supervisory powers should order the return of the seized property.

Of course the district court may find governmental interests in Margolis' property in addition to its evidentiary value. Although the government has not strongly pressed this point on appeal, the possibility of forfeiture of the currency suggests itself. If the property is being held subject to possible forfeiture, retention might be permitted even if no evidentiary justification is found. *Cf. United States v. Fields, supra; In re Brenner, supra.* If this valid purpose is shown to the district court, the court must look to the laws relating to the commencement of forfeiture actions to determine whether the holding of the property without commencing proceedings is reasonable. *United States v. Wilson, supra,* 540 F.2d at 1104. Section 1955(d), relating to gambling-related forfeitures, incorporates the procedures pertaining to the forfeiture of property for violations of the customs laws. 19 U.S.C. §§ 1602 *et seq.* Those sections require that a forfeiture proceeding be promptly instituted. *Id.* §§ 1602–1604; *United States v. One 1970 Ford Pickup,* 564 F.2d 864 (9th Cir. 1977). Aside from the statutory provisions, due process also re-quires forfeiture proceedings against seized property be brought without unreasonable delay. *United States v. One 1970 Ford Pickup, supra,* 564 F.2d at 866 (semble); *United States v. One Motor Yacht Named Mercury,* 527 F.2d 1112, 1114 (1st Cir. 1975); *States Marine Lines, Inc. v. Schultz,* 498 F.2d 1146, 1155 (4th Cir. 1974); *Sarkisan v. United States,* 472 F.2d 468 (10th Cir.), *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *United States v. One 1973 Dodge Van,* 416 F.Supp. 43 (E.D.Mich. 1976); *United States v. One 1973 Ford LTD.,* 409 F.Supp. 741 (D.Nev.1976). If the holding of Margolis' property is justifiable only because of the possibility of forfeiture, the district court should insist on the prompt institution of the appropriate proceedings.

In summary we believe that Margolis' motion must be returned to the district court so that it may consider in the first instance whether the government's decision to hold the $11,975 is reasonably related to the interests it claims in the currency. If the government's only interest in the property is for its use as evidence, the court should determine if this interest might be as well served by such alternative methods preserving the evidentiary value of the seized property by ballot. If the government asserts other interests, such as needs of the investigation or the possibility of forfeiture, the district court should evaluate whether the retention itself and the length of the retention is reasonable in light of those interests.[6]

Since we rest our holding on the court's supervisory power, we do not reach Margolis' contention that the government's actions deny him due process. Nevertheless, we find that this is a serious contention. As we have noted, at least in the context of a forfeiture, courts have found that due process requires the prompt institution of proceedings. The reasoning of those cases

---

**6.** On remand the court should consider the additional time which has passed since its first consideration of the motion.

The government on appeal has raised the question of whether Margolis in fact owns all of the money which is the subject of the motion for return of goods seized. This contention is properly directed to the district court for consideration on remand.

could well apply to the government's holding of property for use at trial.

The order of the district court denying the motion for return of goods will be vacated, and the case will be remanded for further proceedings consistent with this opinion.

Costs taxed against appellee.

ROSENN, Circuit Judge, concurring.

I concur in the result reached by the majority. I cannot, however, join them in holding that the district court may require the return of the seized property under the district court's "powers to supervise law enforcement officials and the United States Attorney within its jurisdiction." I believe this court, in formulating standards concerning the retention of goods and cash seized by the Government under a valid warrant, should not rely upon such undefined powers.

I recognize that federal courts do have certain inherent supervisory powers. The Supreme Court, in the exercise of its broad judicial powers of supervision of criminal justice in the federal courts, may formulate rules of evidence to be applied in criminal prosecutions, *McNabb v. United States,* 318 U.S. 322, 341, 63 S.Ct. 608, 87 L.Ed. 819 (1942), and courts of appeals have the power to supervise proceedings within their jurisdiction. *See United States v. Schiavo,* 504 F.2d 1, 7 (3d Cir. 1974) (en banc), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974); *Paradiso v. United States,* 482 F.2d 409, 413 (3d Cir. 1973). The district courts have supervisory powers to discipline attorneys subject to their jurisdiction. *See Go-Bart Importing Co. v. United States,* 282 U.S. 344, 355, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

Under their authority to discipline attorneys and Rule 41(e) of the Federal Rules of Criminal Procedure, district courts may order the return or the suppression of illegally seized evidence held by the United States Attorney, even when there are no other criminal or civil proceedings pending. *See In re Grand Jury Proceedings,* 450 F.2d 199, 207–08 (3d Cir. 1971) (en banc), *aff'd sub nom. Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). But in those cases cited by the majority in which courts have exercised such authority, the orders for return or suppression have been based on a finding that the Government seized the evidence in violation of a statute or the Constitution. *Go-Bart Importing Co., supra* (violation of Fourth Amendment); *United States v. Chapman,* 559 F.2d 402, 406 (5th Cir. 1977) (dictum, since criminal proceedings had already begun; court looks for "callous disregard" of constitutional rights); *In re Grand Jury Proceedings, supra* at 209 (violation of statute and Fourth Amendment); *Lord v. Kelley,* 223 F.Supp. 684, 690 (D.Mass.1963), *appeal dism'd,* 334 F.2d 742 (1st Cir. 1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965) (violation of Fourth Amendment).[1]

Margolis concedes that the seizure of the goods and cash was lawful. If, therefore, the district court is to direct return of the goods and cash, the basis of the order must be that the continued retention by the United States Attorney deprives Margolis of property without due process.

I believe that the due process issue raised by appellant cannot be avoided. When upon remand the district court, applying the standards established by this court, decides whether further retention of the property is reasonable, it must decide whether

---

1. An order to return the goods and cash would not fit within the supervisory power recognized in *United States v. Jacobs,* 547 F.2d 772 (2d Cir. 1976), *cert. dism'd as improvidently granted,* 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978). Although there the appellate court imposed a sanction for the conduct of a Strike Force prosecutor, that sanction was a direction that the trial court suppress certain testimony in the proceedings before it. 547 F.2d at 776–

77. The context of *Jacobs,* moreover, differed importantly from that of the case now before the court. In *Jacobs* the prosecutor had violated the Department of Justice's own guidelines and the uniform practice of United States Attorneys within the circuit to advise a potential defendant appearing before the grand jury that he was a target of the investigation. In the instant case, we have no violation of rule or law unless it be due process.

under the circumstances Margolis has been deprived of property without due process of law.